**Jack E. BARTH and William Levine**

**v.**

**The UNITED STATES.**

**No. 349–74.**

United States Court of Claims.

Jan. 25, 1978.

John I. Heise, Jr., Silver Spring, Md., for plaintiffs; Heise Jorgensen & Stefanelli, P. A., Silver Spring, Md., of counsel.

Anthony Thompson, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before COWEN, Senior Judge, and DAVIS and KUNZIG, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' CROSS–MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge:

This civilian pay case is before the court on cross-motions for summary judgment. Jack E. Barth and William Levine (plaintiffs), civilian employees of the Department of the Navy, were, for a period of time, directed to report to a test site some 40 miles away from their assigned duty station. They claim entitlement to overtime and night differential pay for time spent in travel status between the duty station and the test site (i. e., driving time each duty day prior to reaching the site for a regular work shift and again upon the conclusion of the shift). The general rule is that travel time is not considered hours of employment. We hold that the facts of this case do not bring plaintiffs' travel within the peculiar language of the narrowly drawn statutory exception to this rule.

This suit covers a period of time, commencing in 1971 and continuing through 1972, during which the plaintiffs were directed by the Navy to observe, monitor and evaluate the results of tests on a weapons system which were being conducted by the Sperry Rand Company under a contract with the Government. Throughout the time in question, plaintiffs traveled between Great Neck, New York (the duty station) and Ronkonkoma (the test site). Plaintiffs reported routinely to Ronkonkoma, according to a schedule prepared in advance, where they worked regular shifts either from 8:00 AM to 4:30 PM or from 4:00 PM to 12:30 AM. That regular schedule was maintained without variance though sometimes, of course, plaintiffs were required to remain later and, on rare occasion, arrive earlier; in such instances they received overtime pay for the additional time actually spent at the test site.

Plaintiffs were, as a rule, provided with free use of a Government car for the trip and when one was not available, plaintiffs received transportation allowances and reimbursable expenses. Plaintiffs also received *per diem* allowances every time they went to Ronkonkoma. In this manner, apart from salaries and use of Government transportation, each plaintiff was paid in excess of $800.

In addition to the allowances and expenses already received, Barth and Levine seek overtime and night differential for that time spent in travel status to and from Ronkonkoma.[1] Plaintiff Barth sought to have his travel time reclassified as hours of employment in a claim which was rejected by the General Accounting Office on April 23, 1973. Plaintiff Levine made a similar claim to the Naval Plant Representative Office at Great Neck, and it was similarly rejected in November 1973.

Plaintiffs filed their petition in this court on September 25, 1974. The pay claim (amounting to more than $2000 each) is based on the Federal Employees Pay Act of 1945, as amended. 5 U.S.C. § 5542 and § 5545 (1970). Section 5542 establishes overtime pay rates and sets up both the general rule re travel time and its exceptions. The specific portion of the Act which governs this case is 5 U.S.C. § 5542(b)(2)(B)(iv) (1970)[2] (the statutory exception).

The Government argues that travel time is generally not compensable. The only circumstances in which time spent in travel status may be counted as hours of employment are those provided for by Congress in the statutory exception. The relevant exception requires that the travel result "from an event which could not be *scheduled* or *controlled* administratively." 5 U.S.C. § 5542(b)(2)(B)(iv) (emphasis added). Defendant contends that the work shift certainly was scheduled administratively throughout the period in question and further maintains that the testing "event" itself was at least partially controlled administratively. The Government concludes that plaintiffs simply do not fit under the statutory exception and that plaintiffs' claim must, therefore, be denied.

Plaintiffs respond by focusing attention on the Sperry Rand Company, the private contractor which actually performed the tests. Plaintiffs' view is that, where a private contractor runs the testing, as in this case, "control" of the "event" necessarily passes out of the hands of the agency. According to this view, plaintiffs assert that their travel time qualifies as hours of employment since it results from an event not "controlled administratively."

After fully considering plaintiffs' contentions, we nonetheless hold for defendant. Our starting point is the proposition that travel which has no purpose other than to transport an employee to and from the place where he is to perform his duties is not work and is not compensable as overtime, e. g., *Ayres v. United States,* 186 Ct.Cl. 350 (1968); *Biggs v. United States,* 287 F.2d 908, 152 Ct.Cl. 545 (1961); *Ahearn v. United States,* 142 Ct.Cl. 309 (1958), *cert. denied,* 364 U.S. 932, 81 S.Ct. 381, 5 L.Ed.2d 366 (1961).[3] That basic rule is currently

---

1. Ronkonkoma is approximately 40 miles from Great Neck. The driving time is about one hour each way. Plaintiffs are thus seeking overtime pay for two hours spent on the road each day that they went to Ronkonkoma, e. g., the hours 7:00–8:00 AM and 4:30–5:30 PM which bracket the regular 8:00 to 4:30 PM shift of duty and the corresponding travel hours for the evening shift.

2. 5 U.S.C. § 5542(b)(2)(B)(iv) provides in pertinent part:

   5542 overtime rates; computation

       \*    \*    \*    \*    \*    \*

   (b) For the purpose of this subchapter—

       \*    \*    \*    \*    \*    \*

   (2) time spent in a travel status away from the official-duty station of an employee is not hours of employment unless—

       \*    \*    \*    \*    \*    \*

   (B) the travel . . . (iv) results *from an event which could not be scheduled or controlled administratively.*

   It thus creates an exception to the general rule that commuting time is noncompensable.

3. For a prior analysis by this court of federal overtime problems, *see Baylor v. United States,* 198 Ct.Cl. 331 (1972).

# 1332

reflected in the Federal Employees Pay Act, 5 U.S.C. § 5542(b)(2) and is subject only to those exceptions now codified at § 5542(b)(2)(A) and (B). The ground rules long established continue to apply; plaintiffs, if they are to recover, must come within a statutory exception. Plaintiffs do not do so here.

■ The work shifts at Ronkonkoma were scheduled administratively. Plaintiffs traveled to and from the test site over periods of several weeks. The starting and finishing times of their duty shifts were set by the Navy and remained constant. The contractor advised the Navy sufficiently in advance of any test phase so that the Navy was able to schedule personnel on monitoring shifts. Such scheduling of plaintiffs' travel was predictable and planned by the agency. It is beyond question that plaintiffs' travel was in response to a wholly foreseeable directive and that they, in fact, went to work at the same place at the same time over a period of weeks and months. In this regard they were much like any other commuters and certainly not within the "could not be scheduled" portion of the statute upon which they must rely.

Turning to the "could not be controlled" portion of the statute, we agree with defendant that this case presents a middle situation with respect to control of the testing "event." While this is not an instance of total control by the Government, neither is it one where there is a total lack of Government control (which the exception requires). This is, instead, an intermediate case where the agency shares control with the contractor and exercises its control indirectly.

It is clear that the testing "event" was administratively controllable to some extent. Plaintiffs make much of defendant's admission that the scheduling of the tests may not have been "technically" within the

Government's control because the testing was actually performed by the contractor. Even so, the testing remained controllable by the Government in certain essential aspects. The testing was conducted by Sperry Rand under contract with the Government. The contractor advised the Navy of its planned test dates well in advance of the projected "events." And, on those days when "events" did occur, the contractor was not at liberty to run its tests free from all constraints, but was cognizant of the Navy requirements that called for the testing to be observed by the Navy's civilian engineers. As those engineers were only on duty shifts at Ronkonkoma between 8:00 AM and 12:30 AM, the inference is compelling that the tests were to be run inside those hours and that the contractor was thus subject to administratively imposed controls. Of course it happened that testing sometimes unexpectedly took place outside the scheduled hours. But such rare instances do not indicate the absence of Government control, indeed, just the opposite—the unusual nature of such incidents tend to show that administrative control over the "event" was pervasive even though indirect.

The time that plaintiffs spent in travel status away from their official duty station resulted from an event which was both *scheduled* and *controlled* (albeit indirectly) by their agency. Such travel time does not meet the conditions of the narrowly drawn statutory exception and, therefore, by the unambiguous dictate of the statute, cannot be considered hours of employment.[4]

Though we may perhaps sympathize with the plaintiffs in this case, we are bound to apply the statute as we find it written. The current statutory scheme does not permit us to compensate the plaintiffs. Though we are aware that Congress has exhorted the agencies to schedule travel

4. Nor do the implementing regulations offer any support to plaintiffs. The statutory exception is repeated without embellishment at 5 C.F.R. § 550.112(e)(2)(iv). Neither do the examples provided in the Federal Pay Manual (FPM) as an aid in applying 550.112(e) support plaintiffs' position. In fact, one example that is somewhat analogous goes the other way. Case No. 3, FPM Supp. 990–1 § 550–8.04 (advising that "although the number of people calling at a [Social Security Administration] contact station cannot be controlled or scheduled, the contact station hours could be scheduled.").

time so that it occurs within the work shift, 5 U.S.C. § 6101(b)(2) (1970),[5] sometimes this is impossible. Yet Congress, far from providing a remedy, has affirmatively prohibited an award of overtime pay for travel time unless the peculiar conditions of the statutory exception are met. No doubt it would be a difficult task to draft a provision which is more realistic and yet avoids the Lewis Carrollian result of paying all federal employees to drive to work. But such a task, quite properly, does not lie within the power of the judiciary; it lies with the legislature. To achieve what they desire, plaintiffs must obtain appropriate statutory amendments from the only body so empowered, Congress. In summary, we have held that the time these plaintiffs spent in travel status away from their official duty station does not fit within the language of the statutory exception. As a result, we must apply the general rule that travel time is not considered hours of employment and is not compensable.

Accordingly, plaintiffs' cross-motion for summary judgment is denied. Defendant's motion for summary judgment is granted, and judgment is hereby entered for defendant.

---

5. § 6101. Basic 40-hour workweek; work schedules; regulations

     *    *    *    *    *    *

  (b) * * *

(2) To the maximum extent practicable, the head of an agency shall schedule the time to be spent by an employee in a travel status away from his official duty station within the regularly scheduled workweek of the employee.